UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> ERMINIA CORONA, et al., <br><br> Defendants. | Case No.: 1:12-cv-01844 - AWI - JLT <br><br> FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT <br><br> (Doc. 18) |

J & J Sports Productions, Inc. ("Plaintiff") seeks the entry of default judgment against defendant Raul Ortega Corona, individually and doing business as Coronas Cantina Y Comida ("Defendant"). (Doc. 18). Defendant has not opposed this motion. The Court found the matter suitable for decision without an oral hearing pursuant to Local Rule 230(g), and the matter was taken under submission on June 12, 2013. (Doc. 21). For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED IN PART**.

**I.     Procedural History**

Plaintiff filed its complaint against Defendant on November 9, 2012, asserting it possessed the exclusive rights to the nationwide commercial distribution of "Manny Pacquiao v. Juan Manuel Marquez III WBO Welterweight Championship Fight Program" ("the Program") televised on November 12, 2011. (Doc. 1 at 4). Defendant was served with the complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff,

1

default was entered against Defendant on February 7, 2013. (Docs. 8-9). Plaintiff filed the application for default judgment now pending before the Court on May 13, 2013. (Doc. 18).

## II.     Legal Standards Governing Entry of Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

## III.    Plaintiff's Factual Allegations

The factual assertions of Plaintiff are taken as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program and, pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 4-5). Plaintiff asserts Defendant "is an owner, and/or

operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Coronas Cantina Y Comida." *Id.* at 3.

Plaintiff alleges Defendant broadcast the Program in Coronas Cantina Y Comida without purchasing a proper sublicense from Plaintiff. *Id.* at 3-4. For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code. *Id.* at 4-8. In its application for default judgment, Plaintiff requested damages for the violation of 47 U.S.C. § 605 and conversion. (*See* Doc. 18-1). Therefore, the Court will address only these claims.

**IV.    Discussion and Analysis**

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

**A.    Prejudice to Plaintiff**

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

**B.    Merits of Plaintiff's claims and the sufficiency of the complaint**

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

1.    Claim arising under 47 U.S.C. § 605

The Federal Communications Act of 1934 ("Communications Act") "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)). In

pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the … contents … of such intercepted communication to any person." 47 U.S.C. § 605(a).  Thus, Plaintiff must establish it was the party aggrieved by Defendant's actions.  47 U.S.C. § 605(e)(3)(A).  In addition, Plaintiff must show Defendant intercepted a wire or radio program and published it without permission. 47 U.S.C. § 605(a).

      *a.*     *Party aggrieved*

Under the Communications Act, a "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6).  In the Complaint, Plaintiff asserted that J & J Sports Productions was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 4).  However, the rate sheet for the Program attached as Exhibit 1 to the affidavit of Joseph Gagliardi, President of J & J Sports Productions indicates G & G Closed Circuit Events, Inc. was the only legal licensor for the Program:

> All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G&G Closed Circuit Events Inc.  There is NO OTHER LEGAL LICENSOR.  Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

(Doc. 19 at 9) (emphasis in original).  Parties seeking additional information are directed to contact Art Gallegos, Vice President of G&G Closed Circuit Events.  *Id.*  Consequently, the evidence before the Court appears to contradict the factual allegations of Plaintiff's complaint.

On June 27, 2013, Joseph Gagliari, President of J & J Sports Productions, Inc., filed a declaration explaining his company used G & G Closed Circuit Events "to sell closed-circuit licenses to commercial locations throughout the United States . . . and for that reason, it was G & G (rather than [Plaintiff]) that prepared the Rate Card evidencing commercial licensing fees applicable" to the Program. (Gagliardi Decl. ¶3 n.1, Doc. 23 at 2).  Based upon this explanation, the Court finds Plaintiff was the party aggrieved within the meaning of § 605.  *Id.*

      *b.*     *Interception and publication of the Program*

Plaintiff acknowledges it "cannot determine the precise means that the Defendants used to receive the Program." (Doc. 18-1 at 8). Similarly, in *Joe Hand Prod. v. Behari*, 2013 U.S. Dist. LEXIS

4

37277 (E.D. Cal. Mar. 18, 2013), the plaintiff was unable to identify the nature of the transmission. This Court observed: "Plaintiff's inability to allege the precise nature of the intercepted transmission in this case …raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Id.*, 2013 U.S. Dist. LEXIS 37277, at *7. Nevertheless, Plaintiff provided evidence that Defendant broadcast the Program in his establishment, because the investigator witnessed the Program broadcast at Coronas Cantina Y Comida. (Doc. 18-3 at 2).

Because Plaintiff was a party aggrieved, and Defendant intercepted the Program and published it without permission, Plaintiff has established the elements of a claim under the Communications Act.

### 2. Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Previously, this Court determined the possession of "a right to distribute programming" constitutes ownership of properly for purposes of conversion. *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (citing *Don King Prods./ Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to possess the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the distribution rights, the company held a "right to possession of property." Further, Plaintiff alleged facts sufficient to support a finding that Defendant engaged in signal piracy by broadcasting the Program without a sublicense. The investigator estimated Coronas Cantina Y Comida had a capacity of "approximately 27 people." (Doc. 18-3 at 3). The rate sheet indicates a sublicense cost $2,200.00 for an establishment with the capacity up to 100 persons. (Doc. 23, Exh. 1). Consequently, Plaintiff has established damages in the amount of $2,200.00, and states a claim for conversion against Defendant.

///

### C. Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff seeks compensatory damages for Defendant's tortuous conversion of Plaintiff's property. (Doc. 18-1 at 20). Also, Plaintiff requests statutory damages totaling $110,000 for the violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. *Id.* at 8. Plaintiff asserts Defendant should pay the statutory maximum because nominal damages have proven insufficient to combat piracy. *Id.* at 19-20. Thus, Plaintiff appears to concede that amount of damages requested is not proportional to Defendant's conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F. Supp. 2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Montes*, 2013 U.S. Dist. LEXIS 9282, at * 5 (N.D. Cal. Jan. 22, 2013) ("the large amount of money that Plaintiff is requesting—maximum statutory damages—weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged"); *Moore v. Cisneros*, 2012 U.S. Dist. LEXIS 177044, at *5 (E.D. Cal. Dec. 12, 2023) ("[d]efault judgment is disfavored when a large sum of money is involved"); *but see G & G Closed Events, LLC v. Shahen*, 2012 U.S. Dist. LEXIS 58723, at *18 (E.D. Cal. Apr. 26, 2012) ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment). However, the factor does not weigh against Plaintiff's request for default judgment because the Court declines to enter judgment in the amount requested.

### D. Possibility of dispute concerning material facts

Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendant failed to appear. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendant was served with the Summons and Complaint, as well as the motion for default judgment. (*See* Doc. 18-1 at 23). Given these facts, it is unlikely that Defendant's actions were the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). Accordingly, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendant's failure to appear before the Court and defend in this action makes a decision on the merits impractical.

## V. Damages

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When the Court determines a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii). The Court has "wide discretion" to determine the proper amount of damages to be awarded. *DirecTV Inc. v. Le*, 267 F. App'x 636 (9th Cir. 2008) (citation omitted).

The Court may consider a number of factors in its determination of the amount of damages, including any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951, at * 10-11 (E.D. Cal. Sept. 6, 2011) (citing *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Victor Loza, Plaintiff's investigator, noted a cover charge was not required to enter Coronas Cantina Y Comida. (Doc. 18-3 at 2). Mr. Loza noted the Program was displayed on two televisions, including one "located on the north side wall" and the other "behind the bar." *Id.* According to Mr. Loza, Coronas Cantina Y Comida had a capacity of "approximately 27 people," and his headcounts revealed 6 to 11 patrons were in the establishment. *Id.* at 3. Given these factors, the Court finds an award of $7,000, which is more than three times the cost of a proper sublicense, is appropriate.[1]

Although Plaintiff asserts a right to enhanced damages, allegations regarding the amount of damages must be well-plead and supported by factual allegations. *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at 560. "The mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." *Sorondo*, 2011 U.S. Dist. LEXIS 99951, at *10 (quoting *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)). Here, Plaintiff alleged: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by the Defendant was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." (Doc. 1 at 5). Importantly, there are no factual allegations in the complaint to support the conclusion that Defendant's actions were for the purpose of financial gain.[2] Previously, the Court explained:

> To adequately state a claim against a defendant, a plaintiff must set forth the legal and factual basis for his or her claim. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678. A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-56 (internal quotation marks and citations omitted). In its complaint, Plaintiff simply alleged a legal conclusion: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by each of the Defendant [sic] was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."

---

[1] Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors. *See, e.g., Joe Hand Promotions v. Brown,* 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $4,000 in damages where the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 in statutory damages, an amount two times the cost of a sublicense).

[2] In light of the fact the fight was displayed on two TVs, the Court accepts the piracy was willful.

8

*Joe Hand Promotions, Inc. v. Hathcock*, 2012 U.S. Dist. LEXIS 101208, at *2-3 (E.D Cal. July 20, 2012). Consequently, the Court found Plaintiff "failed to allege facts establishing the grounds of entitlement to enhanced damages." *Id.* at *3.

Though the evidence submitted demonstrates that the fight was being displayed, there is no indication food or drink prices were increased because of the fight. (Doc. 18-3 at 2) In fact, the investigator paid $4 for his beer and there is no evidence this price was higher than average for a beer at a bar. Id. Also, the affiant admits there was no cover charge and fails to indicate there was any advertising related to the fight. Id. Finally, there is no indication the number of people in the bar was unusual or can be attributed to the display of the fight. Id. at 3. Thus, there is insufficient evidence to demonstrate the piracy was done for purposes of commercial or private gain and, therefore, insufficient basis upon which the Court may rely to award enhanced damages. Significantly, the complaint now before the Court contains the same language as the complaint in *Hathock* and suffers the same infirmities. Accordingly, enhanced damages are not recommended.

Finally, because Plaintiff chose to receive statutory damages rather than actual damages under the Communications Act, damages for conversion are subsumed into the total award of $7,000. *See, e.g., Joe Hand Promotions, Inc. v. Behari*, 2013 U.S. Dist. LEXIS 37277 at *8, n.2 (E.D. Cal. Mar. 18, 2013) (explaining damages conversion would not be awarded "because the recommended statutory damages will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative"); *J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (E.D. Cal. May 7, 2010) (declining conversion damages because statutory damages "sufficiently compensate[d]" the plaintiff).

### VI.     Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. However, the damages requested are disproportionate to Defendant's actions. Importantly, when determining the amount of damages to

9

be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198. Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.*

Accordingly, the Court recommends the award of $7,000 for Defendant's wrongful acts. This amount both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy. *See Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (observing that a lower statutory award may deter while not destroying a business).

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's application for default judgment (Doc. 18) be **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:

    A. Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $7,000;

    B. Plaintiff's request for enhanced damages be **DENIED**;

    C. Plaintiff's request for damages for the tort of conversion be **DENIED**;

2. Judgment be entered in favor of Plaintiff J & J Sports Productions, Inc. and against Defendant Raul Ortega Corona, individually and doing business as Coronas Cantina Y Comida; and

3. Plaintiff be directed to file any application for attorney's fees pursuant to 47 U.S.C. § 605 no later than fourteen days from the entry of judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

1  The parties are advised that failure to file objections within the specified time may waive the
2  right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 10, 2013**                                   **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE